# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL CASE NO. 2:11cv59

| | |
|---|---|
| REGROUP DEVELOPMENT, LLC, a Florida Corporation, and REGROUP SAPPHIRE 281, LLC, a Florida Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> RABUN COUNTY BANK, a Georgia Corporation, <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on the Defendant's Motion for Attorneys Fees and Court Costs [Doc. 93]. The Clerk previously has addressed the court costs component of the Defendant's Motion and awarded Defendant costs in the amount of $9,310.55. [Doc. 98]. Neither party objected to the Clerk's award of costs, and the time within which to do so has expired. For the reasons stated herein, the Court will deny the second component of Defendant's Motion and decline to award attorney's fees.

**FACTUAL AND PROCEDURAL SUMMARY**

Florida businessmen Michael Kelleher and James Lawson, during the mid 2000s, purchased and developed real estate in various locations, including in the Sapphire Valley area of Western North Carolina. Like many real estate investors during that time, their business plan was to improve and flip properties. During the time period encompassing this lawsuit, the two men and/or their LLCs owned approximately 2 homes and 10 undeveloped lots in Sapphire Valley. Among other entities they operated Regroup Development LLC ("Regroup").

In 2007 Kelleher located an older home with a nice view at 281 Beckonridge Trail in Sapphire Valley. Kelleher entered into a purchase contract to "lock in" this property. On his return to Florida Kelleher met with Lawson to discuss this property further. About this time Kelleher and Lawson, acting as Regroup, hired David Mahoney as a contract CFO for the LLC. Regroup was working on a hotel refurbishment project in Florida and needed some accounting help.

Kelleher and Lawson approached Mahoney about creating a joint venture regarding the 281 Beckenridge Trial property. Although nothing regarding the joint venture was ever reduced to writing, the men agreed as follows. Mahoney would become a joint venture with Regroup (as opposed

to partnering with Kelleher and Lawson). Mahoney would contribute his name and good credit rating to be the purchaser (along with his wife) of the property. He would not, however, need to contribute any funds. Regroup would contribute all the cash necessary and act as the development manager to renovate the property. Once the project was completed, Mahoney would sell the property and the three men would split any profits equally (presumably 1/3 to Mahoney and 2/3 to Regroup). There was never any discussion about the potential for losses.

Mahoney applied for financing through Countrywide Home Loans, Inc., representing to the lender that this financing was for a "second home." Mahoney (and his wife) initially purchased the 281 Beckonridge house for $380,000. Countrywide required a 20% down payment in order to fund the loan. Half of the down payment ($38,000) was paid in cash by Regroup. Mahoney signed a promissory note and deed of trust in favor of Countrywide for 80% of the purchase price. Mahoney contributed no cash to the project but instead satisfied the remaining 10% (the other half of the down payment) down payment by executing a Countrywide Equity Home Line of Credit for $38,000. The riders to the Countywide deed of trust and Countrywide Equity Home Line of Credit specifically prohibited Mahoney

from using the loan proceeds to purchase this home as an investor with other persons, for rental, or for any use other than a second home.

After Mahoney purchased the property, Regroup began renovations. Representing that he was the owner/builder, Mahoney obtained the building permit for the property. After sinking $232,000 of their own money into the project, Kelleher and Lawson approached Mahoney and asked him to obtain a construction loan to supply more renovation funding. Mahoney obtained the construction loan from Defendant Rabun County Bank. Mahoney, Kelleher, and Lawson dealt with Deborah Thompson at Rabun. Like his application for the Countrywide loans, Mahoney represented that the purpose of the construction loan from Rabun would be for him to renovate the property as a second home, not as an investment property.

As a part of Rabun's construction loan, Rabun paid off the Countrywide loans, allocated a fixed amount to be advanced for construction based upon a construction budget, and held back $93,508.52 which would be disbursed when the house was 100% complete. This "set aside" money was the equity that Mahoney represented he had put into the property prior to requesting the Rabun construction loan. Even to this point, however, Mahoney had injected no cash of his own into the venture. At some point Kelleher and Lawson created Regroup Sapphire 281 LLC as

4

the entity into which Mahoney's construction loan draws from Rabun County Bank would be deposited, and out of which the construction loan payments to venders would be issued. Mahoney never disclosed the existence or terms of the joint venture agreement to Rabun before the loan closed. Kelleher and Lawson assumed Rabun knew of the joint venture arrangement prior to the loan closing.

Shortly after the Rabun loan closing in March of 2008, Kelleher discovered that the foundation for the house at 281 Beckonridge Trail had to be completely replaced. These unexpected foundation problems consumed a great deal of the construction proceeds. Mahoney left the employ of Regroup in July of 2008 because the hotel project he contracted to help with was winding down. By the late summer of 2008, the construction loan funds were nearly exhausted. In November 2008, Mahoney, with the assistance of Kelleher and Lawson, drafted and mailed a proposal to Rabun where they asked Rabun to release the set-aside funds to enable Regroup to finish the renovations to the property. Two draw requests were pending at that time. Insufficient construction loan proceeds remained to fund both draw requests. In January, 2009, Rabun funded one of these draw requests, thus exhausting the construction loan. On March 6, 2009, Rabun funded the remaining draw request with a

portion of the set-aside funds.  Rabun did not approve any further draw requests.

Plaintiffs contended at trial that Rabun's' funding of the March 6 draw request with a portion of the set aside funds constituted an acceptance of their proposal to continue funding the project with the all of the remaining set aside funds.  Rabun denied it had agreed to any proposal at all and that it was merely attempting to work with its borrower, Mahoney, in an effort not to foreclose.  The last construction loan payment was made in either February or March, 2009.  On June 2, 2009, Rabun notified Mahoney of his default for nonpayment of the construction loan.  Ultimately Rabun settled with Mahoney, accepting from him a deed in lieu of foreclosure plus $25,000.  The Plaintiffs thereafter brought this action.

Plaintiffs, in their Second Amended Complaint [Doc. 20] alleged six claims for relief: (1) Negligent Misrepresentation; (2) Fraud in the Inducement/Fraudulent Misrepresentation; (3) Unfair and Deceptive Trade Practices; (4) Unjust Enrichment; (5) Breach of Fiduciary Duty; and (6) Constructive Fraud. Defendant, in addition to denying Plaintiffs' allegations, raised among others the affirmative defenses of fraud, unclean hands, and release.  [Doc. 22].

6

The case proceeded to trial before a jury. Plaintiffs' theory of liability on each of their claims hinged upon the jury finding that a fiduciary relationship arose between Plaintiffs and Defendant. Plaintiffs conceded that there was no privity of contract between them and Rabun. Plaintiffs asserted that the fiduciary relationship arose from Rabun releasing $15,159.98 of set-aside money to fund Mahoney's last draw request on March 6, 2009.

The jury returned with a verdict in favor of Defendant Rabun County Bank. The jury found no fiduciary relationship existed between Plaintiffs and Defendant. The jury also found that Plaintiffs' renovations to the 281 Beckonridge property did not unjustly enrich the Defendant. [Doc. 90]. Based thereon, judgment was entered in favor of the Defendant. Defendant the filed the instant Motion for costs and fees. The Clerk awarded Defendant costs in the amount of $9,310.55. [Doc. 98]. Defendant's attorneys' fee request is now ripe for consideration.

## **DISCUSSION**

North Carolina follows the general common law principle that civil litigants bear the cost of their own attorneys' fees. Therefore attorneys' fees may not be awarded without statutory authority. <u>Stillwell Enters., Inc. v. Interstate Equip. Co.</u>, 300 N.C. 286, 289, 266 S.E.2d 812, 814–15

(1980). Defendant has asserted five statutory bases it claims would support an award of attorneys' fees. These grounds are found in N.C. Gen. Stat. §§ 1D-45; 6-21.2; 6-21.5; 75-16.1; and Fed.R.Civ.P. 11.

1. <u>N.C. Gen. Stat. § 6-21.2.</u>

Defendant invokes section 6-21.2 as one such authority. In pertinent part, section 6-21.2 states:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity[.]

<u>Id.</u>

While the construction loan agreement executed by Mahoney that obligated Defendant to provide funding for the 281 Beckonridge Trail renovation project arguably fits within the statute's definition of "note, conditional sale contract or other evidence of indebtedness," none of the Plaintiffs were signatories to that construction loan agreement. This a requisite condition to an award of attorneys' fees based upon any such note. "[W]e hold that the term 'evidence of indebtedness' as used in G.S. 6-21.2 has reference to any printed or written instrument, <u>signed or otherwise executed by the obligor(s)</u>, which evidences on its face a legally

8

enforceable obligation to pay money." Stillwell, 300 N.C. at 294, 266 S.E.2d at 817 (emphasis added).

One of Defendant's contentions at trial to preclude Plaintiffs' recovery was that no privity existed between Plaintiffs and Defendant with regard to the construction loan agreement executed by Mahoney. See "Defendant's Fifth Affirmative Defense" ("Plaintiffs should be denied any relief on its Second Amended Complaint since there is a lack of privity of contract between the Plaintiffs and the Defendant, Rabun County Bank and the Plaintiffs was [sic] not an intended third party beneficiary of the Construction Loan Agreement or any other agreement between the Defendant and David Mahoney.") [Doc. 22 at 8]. That lack of privity likewise bars the recovery of fees pursuant to N.C. Gen. Stat. §6-21.2.

2. N.C. Gen. Stat. §§ 6-21.5 and 75-16.1.

Section 6-21.5 of North Carolina's general statutes states:

In any civil action, … the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

Id.

When confronted with a motion for attorneys' fees premised upon section 6-21.5, a court must "review all relevant pleadings and documents of a case in order to determine if either: (1) the pleadings contain a

9

complete absence of a justiciable issue of either law or fact," or (2) "whether the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." Credigy Receivables, Inc. v. Whittington, 202 N.C. App. 646, 652, 689 S.E.2d 889, 893 (2010) (citations omitted). Similarly, North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq., permits a court, in its discretion, to allow a reasonable attorney's fee when a "party instituting [a § 75-1.1] action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2). In order to prevail on a motion for attorneys' fees under N.C. Gen. Stat. § 75-16.1, the defendant must (1) be the "prevailing party" and (2) prove that the plaintiff "knew, or should have known, the [§ 75-1.1] action was frivolous and malicious." Lincoln v. Bueche, 166 N.C. App. 150, 158, 601 S.E.2d 237, 244 (2004).

In this case, Plaintiffs' overarching theory was that their interactions with the Defendant's employee Ms. Thompson, following Mahoney's execution of the Defendant's construction loan agreement, blossomed into a fiduciary relationship between Plaintiffs and Defendant where no legal relationship of any sort formerly existed. In arguing that this theory supported their various causes of actions, Plaintiffs relied primarily upon

the case of In re Shearin Family Investments, LLC, 418 B.R. 870 (Bankr. E.D.N.C. 2009), and to a lesser extent the cases of Harris v. Mathews, 361 N.C. 265, 643 S.E.2d 566 (2007), and Frizzell Constr. Co. v. First Citizens Bank & Trust Co., 759 F.Supp. 286 (E.D.N.C. 1991). While Plaintiffs' evidence supporting this theory was razor thin, the fact that it was (barely) enough to get to the jury precludes a finding that there was a *complete absence* of a justiciable issue of either law or fact. Likewise. It was neither frivolous not malicious. Therefore, attorneys fees are not recoverable under these statutes.

    3.    Rule 11 of the Federal Rules of Civil Procedure.

Defendant concedes in its brief [Doc. 93-5 at 6] that it did not follow Rule 11(c)(1)(A) by serving Plaintiffs with a proper motion identifying any offending pleading, claim, or allegation. Instead, Defendant adopted a wait-and-see approach and, following its trial victory, seeks now to enlist the Court's help in sanctioning the Plaintiffs after the fact while enjoying the comfortable certainty of hindsight. The Court finds this motion to be wholly without merit.

First, for substantially the same reasons discussed above, Plaintiffs' pursuit of its claims simply does not warrant sanctions in this case. Second, and more fundamentally, Rabun has wholly failed to comply with

Rule 11's safe harbor provisions by failing timely to serve any Rule 11 motion on Plaintiffs. Rule 11 states, in pertinent part, as follows:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Fed.R.Civ.P. 11(c)(1)(A). Thus, Rule 11 provides a safe harbor which allows a party, after being presented with a Rule 11 motion, to correct the offending conduct before the Court sees the motion. Rabun never provided Plaintiffs with notice of the allegedly sanctionable issue nor gave Plaintiffs the opportunity to amend, withdraw, or correct it. For both of these reasons, then, the Court will deny Defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11.

  4.  <u>N.C. Gen. Stat. § 1D-45.</u>

Section 1D-45 provides, in pertinent part, "[t]he court shall award reasonable attorneys' fees, resulting from the defense against the punitive damages claim, against a claimant who files a claim for punitive damages

that the claimant knows or should have known to be frivolous or malicious." Id. Defendant seeks attorneys' fees under this provision asserting that Plaintiffs knew or should have known their punitive damages claim was beyond the pale.

The Court allowed the punitive damages claim to go to the jury on the Plaintiffs' theory of constructive fraud. The jury never reached the issue because it found no fiduciary duty. Even though Plaintiffs' evidence on this point was very weak, it does not rise to the level of being frivolous or malicious.

For these reasons, that portion of the Defendant's Motion [Doc. 93] requesting attorneys' fees will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Attorneys Fees and Court Costs [Doc. 93] is **GRANTED in PART and DENIED in PART.** Other than the Clerk's award of Court Costs in the amount of $9,310.55, the Defendant's Motion is **DENIED.**

**IT IS SO ORDERED.**

Signed: June 30, 2014

Martin Reidinger
United States District Judge